117 So.2d 897

William Brown TINSLEY

v.

SEISMIC EXPLORATIONS, INC., of Delaware and W. A. McNeil.

No. 44728.

Feb. 15, 1960.

Oliver, Digby & Fudickar, Monroe, Ellis, Lancaster & King, Frank B. Ellis, William McM. King, New Orleans, for applicants.

Robinson & Atkins, Homer, for plaintiff-respondent.

SIMON, Justice.

Plaintiff, a mineral lessee, seeks the recovery of damages resulting from an alleged geophysical trespass committed by the defendants, Seismic Explorations, Inc., a corporation engaged in conducting seismic tests, and W. A. McNeil, one of its crew chiefs. Plaintiff alleged that, at the time of the alleged trespass, he was the owner of an oil, gas and mineral lease for a valuable consideration, by which the lessor (land-mineral owner) granted him the exclusive right to investigate, explore, prospect, drill and mine for the production of oil, gas and other minerals in and under a certain 280-acre tract of land in Claiborne Parish, Louisiana. Plaintiff alleged that the defendants entered upon the land covered by and burdened with plaintiff's lease and conducted seismograph explorations without his consent and approval. Plaintiff further alleged that his damages are the depreciation in the value of his leasehold rights and the monetary loss occasioned by the refusal of a prospective purchaser of the lease to accept its assignment and transfer. Plaintiff later abandoned these claims and confined his demand for damages under LSA–C.C. Article 2315 solely on the ground that the information obtained by defendant in conducting geophysical operations constituted a trespass on plaintiff's leasehold

rights. The landowner-lessor was not joined in the suit.

In their answer the defendants admitted that, in the process of conducting seismic tests for information leading toward mineral development over a 40,000-acre area, they secured the permission of the owners of the 280-acre tract of land heretofore referred to, and which at the time was subject to an oil, gas and mineral lease in favor of plaintiff; that no consideration was demanded or paid for this permission, nor for permission to conduct such tests on any of the other tracts within the 40,000-acre area. They further allege that at the time the permit was obtained and the tests conducted plaintiff had not commenced any mineral operations on the leased premises, and that there is no factual or legal basis whatsoever for an award of compensable damages.

After a hearing on the merits, the trial judge rendered judgment in favor of plaintiff and awarded damages in the amount of $840, which was held to represent plaintiff's total leasehold investment, i. e., the original consideration of $1 per acre for the first year of the lease, and the payment of a like amount for two annual renewals, with legal interest from date of judicial demand until paid.

The Court of Appeal [111 So.2d 837], though recognizing "the validity and per-suasiveness of defendant's contention that no actual damage has been proved," affirmed the judgment below, holding that by virtue of the mineral lease plaintiff became the exclusive owner of the right to conduct seismic tests; that by virtue of Act 205 of 1938, as amended by Act 6 of the Second Extra Session of the Legislature of 1950, incorporated in LSA–R.S. 9:1105, this right was transformed or converted into a real property right which gave the mineral lessee the right of bringing an action in tort for trespass and to recover damages.[1] On defendant's application we granted writs of review.

On February 19, 1955, F. B. Crow granted a mineral lease to plaintiff covering 280 acres, more or less, in Claiborne Parish, for a consideration of $280 cash and certain royalties to be paid by lessee on any production which might be obtained from any mineral explorations. Under its provisions the lessor-land and mineral-owner granted to plaintiff-lessee the exclusive exploratory rights, common to all mineral leases, and as heretofore stated. It is shown that the lease was renewed for the second and third successive years on payment of the stipulated price; that during the period of time the agents of companies, other than defendants, approached plaintiff for his permission to conduct seismograph tests, all of these proposals were unacceptable. It is

1. Tinsley v. Seismic Explorations, Inc. of Delaware, La.App.1959, 111 So.2d 834, 836.

further shown that defendants, after obtaining the permission of the lessor-land and mineral-owner, without notice to or consent of plaintiff, conducted the seismic tests, resulting in this tort action.

The question presented is whether, under the provisions of LSA–C.C. Article 2315,[2] a mineral lessee can maintain an action for damages resulting from a geophysical trespass committed by a third party who has the consent of the lessor-land and mineral-owner to conduct these mineral tests.

We necessarily concede and have recognized the well-known and accepted fact that:

"  *   *   * the right to geophysically explore land for oil, gas or other minerals is a valuable right. Large sums of money are annually paid landowners for the mere right to go upon their land and make geophysical and seismograph tests. The information obtained as the result of such tests is highly valuable to the person or corporation by whom they are made. If the information thus obtained be favorable, it can be used and is used in dealing with the landowner for his valuable mineral rights. If the information be unfavorable, the fact quickly becomes publicly known and thus impairs the power of the land-owner to deal advantageously with his valuable mineral rights. The average landowner is without means or funds to secure geophysical or seismograph information. Where that information, which is exclusively his by virtue of his ownership of the land, is unlawfully obtained by others, the landowner is clearly entitled to recover compensatory damages for the disregard of his property rights." Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20, 22.

Also see Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656; Holcombe v. Superior Oil Co., 213 La. 684, 35 So.2d 457; Franklin v. Arkansas Fuel Oil Co., 218 La. 987, 51 So.2d 600.

In all of · the foregoing cited cases in which compensatory damages were allowed as a result of a geophysical trespass, the claimant seeking reparation was either the landowner or the owner of a mineral servitude. In an exhaustive research we profess our inability to find any cases in which we recognized and determined the right of a mineral lessee to recover civil damages against a third party charged with a geophysical trespass.

Prior to the passage of Act No. 205 of 1938, as originally enacted,[3] the owner or

---

2.  ·"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it;  *   *   *."

3.  "Oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or

possessor of mineral leases had no standing to prosecute a possessory or petitory action for the protection of his leasehold rights independently of the owner of the fee. Up to that time it was generally recognized that the sale of minerals was, in effect, the creation of a real right, being in its legal sense that of a servitude (Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207). Under the prevailing uncertainty as to the true and definite nature of a mineral lease, in 1936 we finally removed all doubt when in the case of Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846, we held that a lessee had no standing to defend or prosecute his rights as such, independently of his lessor, and that if the latter failed to become party to a suit in which the lessee sought relief, the lessee was without recourse, his contract having produced merely personal, and not real, rights and obligations between him and his lessor, and that his only recourse was an action in warranty against his lessor, thus prohibiting him from maintaining a petitory or possessory action against a third party title claimant.

This pronouncement having been met with consternation by the oil industry, to cure this deficiency or defect[4] Act 205 of 1938 was enacted, supra, wherein the Legislature classified oil, gas and other mineral leases, or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges and obligations resulting therefrom, as real rights and incorporeal immovable property, the latter phrase being merely a synonym for a real servitude imposed upon the land leased in favor of the lessee. Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336. The statute further declared that as such the same may be "asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights" by any procedure available to the owner of land, and without the latter's concurrence or joinder.

Notwithstanding this Act, in Tyson v. Surf Oil Co., supra, we announced that our codal articles dealing with ordinary leases still apply to oil, gas, and mineral leases, in proper cases; that the Legislature intended to grant to mineral lessees,

other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property, and may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights;

without the concurrence, joinder or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land."

4. Allison v. Maroun, 193 La. 286, 190 So. 408.

in the protection of their interests, the advantage of maintaining real actions; and, finally, that it was not designated to modify, change, or alter the substantive nature of leases as codally prescribed.

Again in Amerada Petroleum Corporation v. Reese, 195 La. 359, 196 So. 558, 564, plaintiff, a mineral lessee, sued to set aside a judgment of partition had between the co-owners of the land, and thus to revive and preserve its mineral lease. It was therein urged that the statute having transformed and created a mineral lessee as the holder of *a real right*, i. e., the same right of ownership as that of a lessor (one of the co-owners), the failure to make the mineral lessee a party to the suit rendered the judgment of partition an absolute nullity. We held that Act 205 of 1938 did not give the owner or possessor of a mineral interest (lessee) the right to bring an action for partition as could his lessor; that the mineral lessee was not a necessary party to nor could he prevent the action of partition by licitation between owners of the fee, even though the act classified his status as of the owner of a real right, and even where such rights were acquired from some but not all of the co-owners.

In Colgin v. Harris, D.C.W.D.La., 27 F. Supp. 798, Judge Poterie, as District Judge, said:

"The argument of petitioner that Act No. 205 of 1938 has rendered the

above articles of the Code (Liberative Prescription of 10 years) inapplicable to mineral leases, and has changed the prescriptive period, well settled by jurisprudence, cannot be sustained. This recent act of the Legislature of Louisiana merely provides a remedy to a lessee in that it declares him to have a real right, assertible in the courts. It is procedural in character and does not change nor affect the substantive law."

Therein was quoted an excerpt from a review entitled "The Louisiana Legislation of 1938," one of its two authors being Dean Paul M. Hebert of the Louisiana State University Law School, who, when treating of Act 205 of 1938, concluded that by defining a mineral lease as a "real right," the Act brings the right of the lessee within operation of our Codal articles permitting petitory actions.

■ An examination of our jurisprudence following the Glassell decision, supra, in construing Act 205 of 1938, manifestly shows that a mineral lease creates merely a personal right, with the imposition of personal obligations one owes to another, and which may be solely declared against the obligor, a contract which is similar to any other predial lease. In fact, we have consistently announced that the statute, including its amendment in 1950, as hereinafter dealt with, does not

create or impart a "real right" in its true sense.

In Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, 390, wherein was involved the effect of our laws of registry, it was contended that under these laws a mineral lessee had, by virtue of Act 205 of 1938, acquired a greater right than an ordinary lessee. We held that the statute made no further extension than a grant to mineral lessees of the right to avail themselves of any procedural remedy that may be available to the owner of the realty in the protection and defense of such rights as the lessor legally conveyed; that the laws of registry are not applicable to a contract of letting and hiring within the codal articles.[5] In rejecting this contention we said that the statute is "remedial and procedural in character, and that it has not affected or changed any of the substantive rights flowing from the execution of mineral leases." Wier v. Grubb, 215 La. 967, 41 So.2d 846.

At the next Legislative session following the Arnold decision, Act 205 of 1938 was amended by Act 6 of the Second Extra Session of 1950, and is incorporated in the Revised Statutes as R.S. 9:1105. The amendatory act retained the provisions of the 1938 Act and added a sentence thereto reading:

"This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate."

Our expressed views that the amendatory statute does not create substantive real rights is clearly pronounced in these recent cases, namely Dixon v. American Liberty Oil Company, 226 La. 911, 77 So.2d 533; Perkins v. Long-Bell Petroleum Company, 227 La. 1044, 81 So.2d 389, and Reagan v. Murphy, 235 La. 529, 105 So. 2d 210.

In the Dixon case we held that a mineral lease is distinguished from a mineral servitude in that a lease "does not produce the same legal effect for, though it is characterized as a *real right* in LSA-R.S. 9:1105, it is merely a *contract* which *permits* the lessee to explore for minerals on the land of the lessor in consideration of the payment of a rental and/or bonuses. It places no charge whatever on the land and cannot be put in the same classification as a mineral servitude, which is an incorporeal immovable that attaches to the land itself. See Arnold v. Sun Oil Co.,

---

5. However, in respect to the protection accorded third persons who rely on the public records, Act 7 of the Second Extraordinary Session of 1950 (LSA-R.S. 9:2721–2724), redefines "third persons" to include the lessee in a mineral lease, thus in effect overruling the Arnold case, supra.

218 La. 50, 48 So.2d 369 and cases there cited." (Italics ours.) [226 La. 911, 77 So.2d 537]

In the Perkins case, we said [227 La. 1044, 81 So.2d 393]:

"A mineral lease, though characterized as a real right under LSA–R.S. 9:1105, is, as stated in the last cited case (Dixon v. American Liberty Oil Company), 'merely a contract which permits the lessee to explore for minerals on the land of the lessor in consideration of the payment of a rental and/or bonuses.' To this, we may add that the lessee is not only accorded the right to explore but is obliged to do so in most cases or pay a delay rental if he does not explore within the primary term of the lease. In a mineral lease, the lessor, being entitled to royalties in the event of production, is interested in requiring his lessee to explore. Not so with a landowner whose property is subjected to a mineral servitude. Being without interest in the minerals, he is without right, during the existence of the servitude, to insist upon development, and the only duty required of him is to permit the servitude owner to explore as long as the servitude remains in esse. The grant of the servitude ' * * * does not oblige the owner of the estate subject to it to do anything * * * '. Article 655 of the LSA–Civil Code."

In the Reagan case, which unequivocally resolves the issue here presented, we concluded that the statute, as amended, did not in its true sense create a real right, saying [235 La. 529, 105 So.2d 213]:

"Indeed, it is perfectly evident from even a casual reading of the amendment that the Legislature did not intend to change the essence of the contractual rights and obligations between mineral lessees and lessors but only that it sought to place mineral lessees on the same level as landowners by conferring on them 'benefits' of the laws relating to owners of immovable property. This, the Act spells out in no uncertain terms for, after classifying a mineral lease as a real right, it is declared that the law shall be considered as substantive as well as procedural for a special purpose, i. e., ' * * * so that the owners of * * * mineral leases * * * shall have the benefit of all laws relating to the owners of real rights * * * '."

Again we further said:

"Accordingly, it is clear that the term 'real right' under the civil law is synonymous with proprietary interest, both of which refer to a species of ownership. Ownership defines the relation of man to things and may, therefore, be declared against the world. A personal right, on the other hand, defines man's relationship to man and

refers merely to an obligation one owes to another which may be declared only against the obligor.

"Viewed in this light and applied to mineral leases, it is seen that to say that the Legislature intended to change the true essence of a mineral lease from a personal contract into a real right would necessarily require the conclusion that the mineral lessee *owns* the right to explore for the minerals. The correlative of this proposition is that a mineral lessor divests himself of all proprietary interest in the minerals and has only a personal right to enforce the terms of the lease. This, for the reason that the same thing may not be owned by two persons at the same time. Civil Code, Article 494."

Accordingly, we refused to inject uncertainty and artificiality into our law of oil and gas, opening the door to technical concepts which would run afoul of our traditional rules governing the framework of the law of lease, thereby making uncertain many contractual rights and obligations, *not only* retroactively but prospectively as well.

■ It is well settled that a lease is not in essence a real right. In re Morgan R. & S. S. Co., 32 La.Ann. 371, we said:

"The rights of use, enjoyment, and disposal are said to be the three elements of property in things. They constitute the jura in re. The right of a lessee is not a real right, i. e., a jus in re. In other words, the lessee does not hold one of the elements of property in the thing. His right is a jus ad rem, a right upon the thing * * *."

LSA–C.C. Article 2703 clearly fixes the rights of a lessee whose possession has been disturbed, as follows:

"The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance."

■ From the foregoing observations it necessarily follows that for the mineral lessee to recover the damages sought in this case, it must appear (1) that he became vested with the exclusive right to conduct geophysical surveys on the subject property under the contract of lease, (2) that under the provisions of LSA–R.S. 9:1105 such right is protected against invasion by the timely recordation of the lease, and (3) the damages claimed to have been sustained are established by the evidence.

■ Conceding, without deciding, that the plaintiff-lessee in this instance was granted the exclusive right to conduct geophysical surveys, under his contract of

lease, and that the recordation of the contract of lease protects his rights provided for in the Statute, it is manifest that plaintiff, under the facts and circumstances here presented, has utterly failed to prove any measure of actual damages suffered by him and of such a certainty as to be recoverable under our law.

The Court of Appeal erroneously based its decision on the idea that " * * * the defendants took something of value to themselves through the commission of a quasi offense, although a dollar value could not be definitely established by the plaintiff." But the predicate for recovery under Article 2315 of the LSA–Civil Code is an act " * * * that causes damage to another, * * * " which obliges the wrongdoer to repair the damage. If there has been no actual damage, there can be no recovery. See Layne Louisiana Co. v. Superior Oil Co., supra; Holcombe v. Superior Oil Co., supra; and Franklin v. Arkansas Fuel Oil Co., supra. In essence, the award of the district court, which was affirmed by the Court of Appeal, amounts to the infliction of punitive or exemplary damages which are not recoverable under our law, nor can we countenance an award based on arbitrary measures.

The judgment appealed from is reversed and set aside and plaintiff's suit is dismissed at his cost.

HAMITER, J., concurs in the decree.

117 So.2d 903