341 So.2d 1308 (1976)
J. Edward SICK, III, et al.
v.
BENDIX-UNITED GEOPHYSICAL CORPORATION, formerly known as United Geophysical Corporation, et al.
No. 11035.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
*1309 John V. Baus and Timothy T. Roniger, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiffs and appellants.
John F. Pugh, Pugh, Lanier & Pugh, Thibodaux, and Charles C. Gremillion, Liskow & Lewis, New Orleans, for defendants and appellees.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
LOTTINGER, Judge.
This is an action ex delicto for a geophysical trespass. From a judgment sustaining an exception of no cause of action, and overruling an exception of no right of action, the plaintiffs have appealed and the defendants have answered the appeal.
The plaintiff, J. Edward Sick, III, W. S. Mott, Jr., and Wessely Energy Corporation, have sued Bendix-United Geophysical Corporation, formerly known as United Geophysical Corporation, Florida Gas Transmission Company, Florida Gas Company, and Florida Gas Exploration Company. By a *1310 supplemental and amended petition plaintiffs have added as defendants, Drillamex, Inc., Barber Oil Company and MAPCO, Inc.
The petition alleges that the plaintiffs, Sick and Mott, are the owners of certain oil and gas mineral leases which were obtained by assignment from David J. Robichaux, and which mineral leases are described in an exhibit attached to the petition. It further alleges that the two assignments by which these plaintiffs obtained their ownership had been filed in the conveyance records of Lafourche Parish; that they are attached to the petition as exhibits; that the mineral leases specifically reserved to the mineral lessee the exclusive right to conduct geophysical operations; and that Sick and Mott had assigned a portion of the ownership by letter agreement to the other plaintiff, Wessely Energy Corporation, and that a copy of the agreement was attached to the petition.
A review of the assignments from Robichaux to Sick and Mott shows that they were each executed on March 14, 1972, but not recorded in Lafourche Parish until March 27, 1973. The letter agreement between Sick, Mott and Wessely is dated March 15, 1972, and was accepted on March 16, 1972.
The petition next alleges that on or about June 19, 1972, the defendants entered upon the lands covered by the leases and without the permission of plaintiffs conducted geophysical operations of their own. Plaintiffs asked for damages for this trespass.
The defendants filed a preemptory exception of no right and no cause of action and argued that since the plaintiffs were not the record owners of the mineral leases at the time of the geophysical activity by the defendants, they have not stated a cause of action nor do they have a right of action.
Defendants argue in this court, and we assume the same in the Trial Court, in support of their exception of no cause of action that mineral leases are incorporeal immovables subject to the law of registry, citing LSA-R.S. 31:18[1] and LSA-C.C.P. Art. 3664[2]. As a result thereof, they further argue that unrecorded mineral lessees have no cause of action for a geophysical trespass because interests in immovable property are completely null and void as to third persons prior to their recordation. And in support they cite LSA-C.C. Art. 2266[3], LSA-R.S. 9:2721[4], McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909), Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392 (1958), Tinsley v. Seismic Explorations, Inc., 239 La. 23, 117 So.2d 897 (1960), Andrepont v. Acadia Drilling Company, 208 So.2d 737 (La.App. 3rd Cir. 1968), reversed on other grounds, 255 La. 347, 231 So.2d 347 (1969), Hargroder v. Columbia Gulf Transmission Company, 278 So.2d 864 (La.App. 3rd Cir. 1973), reversed on other grounds, 290 So.2d 874 (La.1974), *1311 and Loeb v. Badalamenti, 192 So.2d 24b (La.App. 4th Cir. 1966), writ refused, 250 La. 24, 193 So.2d 530 (1967).
Plaintiffs contend they have a cause of action for a geophysical trespass under LSA-C.C. Arts. 2315[5] and 2703[6] irrespective of the fact that the trespass was committed prior to the recordation of the assignments of the leases. In essence, plaintiffs argue that a trespasser is not a "third party" who is protected by the recordation doctrine, citing Bergeron v. Con-Plex, Inc., 255 So.2d 397 (La.App. 1st Cir. 1971).
To counter this argument, defendants further argue that Bergeron dealt with a personal right on the part of a surface lessee and not capable of being protected through recordation, whereas in the instant case we are concerned with a real right. They further cite Tinsley for the proposition that there must be a timely recordation before a claim for geophysical trespass can be entertained.
The distinction between the exception of no right of action and that of no cause of action were succinctly explained in Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257 (1954) as follows:
"Generally speaking, an exception of no right of action serves to question the right of a plaintiff to maintain his suit, i. e., his capacity to sue or his interest in the subject matter of the proceeding, whereas an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. * * * The latter is triable entirely on the face of the papers, while evidence may be received under an exception of no right of action for the purpose of showing that plaintiff does not possess the right he claims or that the right does not exist. * * *."
As we view the problem presented, the crucial question to a resolution of the issue is whether a trespasser is a third party privileged to the recordation doctrine?
Significantly enough, the Legislature has spoken on who are third persons or third parties by enacting LSA-R.S. 9:2722 which provides:
"Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property." (emphasis supplied)
When the Legislature in redefining who a third person or third party was by use of the language "dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease," makes it clearly apparent what it intended. Very simply, it is speaking of a purchaser, mortgagee, grantee, vendee or lessee. The last clause in the statute speaks of acquiring a real or personal right, privilege or permit. Therefore, it seems quite obvious merely from a casual reading of this statute that the Legislature never intended to include as a third person or third party a bad faith trespasser, that is a trespasser who does not act under any color of authority or permission granted by any record owner.
*1312 As to the argument by defendants that the Tinsley case is controlling, we do not agree. Though it is true that the Tinsley case was also a geophysical trespass case, it was not tried on an exception of no cause or no right of action, but rather on the merits. As it turned out, the defendant had obtained permission from the landowner-lessor to conduct seismic tests. The landowner-lessor was not joined in the suit. The Trial Court rendered judgment for plaintiff and defendant appealed with the Court of Appeal affirming. Though no mention is made of the recordation by plaintiff of his mineral lease, the Supreme Court does give some indication that prior recordation is necessary, but then reverses the lower court decision for a lack of proof of damages. Considering that defendant had permission from the landowner-lessor, that judgment had been rendered against him and then reversed, we must conclude that any mention of recordation was merely dictum.
After a careful reading and study of both the Hargroder and Andrepont cases, we cannot agree with the position taken by the defendant. Though it is true that the plaintiffs in both cases held unrecorded farm leases and was suing for crop damages, in each case the defendants had permission from the landowners to go upon the property in question. In Andrepont, the defendant held a mineral lease, and in Hargroder, it was a right of way. Factually, the only difference between the two is that in Hargroder the use of the property was limited to the right of way, and the defendant went outside the right of way. Yet, in Hargroder, the Supreme Court does not specifically tackle the problem before this court.
While defendants contend the unrecorded mineral lessee does not have a cause of action for a geophysical trespass, they argue that the only party who could maintain such an action is the record owner. Interestingly it would seem that if the record owner in this case filed suit for the trespass, he would be subject to an exception of no right of action, and it would only be necessary to place the record owner on the witness stand and ask him whether he still owned the mineral lease. It is then conceivable that we could ultimately have a situation where the unrecorded lessee would be out of court on a no cause and the record lessee on a no right, thus the defendant going free.
As we understand and appreciate the application of the public records doctrine, it is intended to protect those third parties by what they find or what they could have found in the public records. That is, one who deals with the record owner is protected vis-a-vis the true owner. However, we do not believe the public records doctrine was ever intended to protect one who did not deal with anybody from the harm that he might have done.
We, of course, agree that as between plaintiffs and defendants, if defendants would have received permission from the record owner of the mineral lease to do seismic work, the plaintiffs would have no cause of action, for their interests are not recorded and the defendants, as third persons or parties would have dealt with the record owner. Therefore, for plaintiffs to properly state a cause of action, plaintiffs must allege that defendants were on the property, not only without plaintiffs' permission, but also without permission of the record owner. Plaintiffs do not allege this in their petition, and only allege that the defendants did not have their permission, and therefore, they did not state a cause of action. However, under LSA-C.C.P. Art. 934, when a preemptory exception is sustained, and grounds can be removed by amendment, same shall be allowed.
As to the defendants' answer to the appeal of the overruling by the Trial Judge of the exception of no right of action, we find no error on the part of the Trial Judge. We note that there are several depositions in the record of this case, but we are left with the distinct impression from reading the briefs and after listening to oral argument, that these depositions were never introduced *1313 into evidence in support of the no right exception. Therefore, we are left with the conclusion that the Trial Judge made his rulings without the use of these depositions.
In support of their exception of no right of action, defendants cite Union Brokerage & Insurance Agency, Inc. v. Terral Industries, Inc., 308 So.2d 855 (La.App. 2nd Cir. 1975) and Michigan Wisconsin Pipe Line Co. v. Walet, 225 So.2d 76 (La.App. 3rd Cir. 1969). After studying both of these cases, we are convinced that neither is controlling. In Union Brokerage, the plaintiff was attempting to enforce an alleged oral contract made in connection with the sale of immovable property. Plaintiff in Michigan Wisconsin was expropriating a pipe line right of way and unrecorded lessees were some of the defendants.
We feel it goes without saying, that after our discussion above concerning who is a third party or person, that there was no error on the part of the Trial Judge.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. It is further ordered that the Trial Court permit appellants a delay of 15 days in which to amend their petition, said respite to commence upon the finality of this decree; thereafter this matter is to proceed in accordance with law and the views herein expressed. The costs of this appeal shall be borne equally by appellants and appellees, all other costs to await further action of the Trial Court.
AMENDED AND REMANDED.
NOTES
[1] LSA-R.S. 31:18 provides:

"A mineral right is an incorporeal immovable. It is alienable and heritable. The situs of a mineral right is the parish or parishes in which the land burdened is located. All sales, contracts, and judgments affecting mineral rights are subject to the laws of registry."
[2] LSA-C.C.P. Art. 3664 provides:

"The owner of a mineral right may assert, protect, and defend his right in the same manner as the ownership or possession of other immovable property, and without the concurrence, joinder, or consent of the owner of the land or mineral rights."
[3] LSA-C.C. Art. 2266 provides:

"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."
[4] LSA-R.S. 9:2721 provides:

"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties."
[5] LSA-C.C. Art. 2315 in part provides:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
[6] LSA-C.C. Art. 2703 provides:

"The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance."