[¡.CLAIBORNE, J.
This action arises out of a Petition for Injunctive Relief and for a Declaratory Judgment regarding a three-foot disputed strip of property (the strip) and the location of a dedicated servitude for a public street, Cypress Street, in Raceland, Louisiana. Defendant, Community Bank of Lafourche (the Bank), appeals a judgment rendered by the trial court limiting the servitude to the forty-foot paved portion of Cypress Street, thereby enjoining defendant from access to Cypress Street across the strip owned by plaintiff, Hospital Service District No. 2 (the Hospital). The trial court further enjoined the Lafourche Parish Council from issuing any permits purporting to allow the Bank or any future owners of the Bank’s property to have access to Cypress Street across the strip owned by the Hospital. Both the La-fourche Parish Council and its predecessor, the Lafourche Parish Police Jury, will be referred to hereinafter as “the Parish.” For the reasons set forth below, we affirm.
FACTS AND BACKGROUND
Approximately forty years ago, in 1962, the Hospital began planning the building of a hospital on its property located in Raceland, Louisiana. In order to establish its property lines, the Hospital entered into a boundary agreement with all of its adjacent property neighbors, including the Bank’s ancestors in title, the Mathernes,[2] on August 18, 1964. The boundary agreement referred to a survey dated July 28, 1964, and prepared by a registered land surveyor, George Bergeron, Jr. The July 28, 1964, survey (Map # 1) was made a part of the boundary agreement between the parties. Map # 1 does not reflect the existence of a servitude given by the Hospital to Lafourche Parish for a public road.[3] Map # 1 only fixes the boundaries between the properties surrounding the Hospital property. The boundary agreement refers to the survey (Map # 1) as being made in order to settle differences regarding boundaries. The line between the Hospital property and the Matherne land (now the Bank’s land) is designated by the letters “A,” “B,” and “C” on Map # 1. Both Map # 1 and the boundary agreement were recorded in the conveyance records for Lafourche Parish on September 4,1964.
On November 17, 1964, the Board of Commissioners of the Hospital, in a resolution referring to a George Bergeron, Jr. survey map dated July 28, 1964, authorized its chairman to grant Lafourche Parish a servitude for a public road through and across the Hospital property. |aThe resolution language stated, in pertinent part, that the chairman was authorized to “grant unto the Parish of Lafourche, through its Police Jury, the necessary rights-of-way or servitudes for the construction, maintenance and improvement of public road facilities through and across its property in Lafourche Parish, all as will be shown more fully by reference to a blueprint of survey dated July 28, 1964, by George Bergeron, Jr., Registered Land Surveyor, annexed hereto and made a part and portion hereof.” The resolution and survey (Map # 2) were recorded in the Parish of Lafourche conveyance records on December 29,1964 at 3:45 p.m.
Map # 2 (entitled Dedication of Streets Twin Oaks Corporation, A.J. Mayet, and Hospital Service District No. 2 of the Parish of Lafourche in Section 29, T-16-S, R-19-E) indicates a forty-foot wide servitude *691 of passage (designated as Cypress Street) dedicated to public use by the Hospital. Map #2 appears to depict one edge of Cypress Street on the property line between the Hospital and the Matherne property. However, the servitude dedication language on Map # 2 is silent as to the exact location and width of the right of passage. The dedication language reads, in pertinent part: “[t]his is to certify that Cypress Street, ... as shown on the within plan be and the same are hereby formally given, granted and dedicated as a servitude of passage for public use. The owners reserve and retain fee ownership of said Cypress Street, ... including all minerals thereunder.” Inside the drawing of Cypress Street on Map #2 are the words, “40' Dedicated by Hospital Service District.” An additional map (Map #3), showing dedication of streets in Twin Oaks Subdivision, dated December 28, 1964, not signed on behalf of the Hospital, was recorded on December 29, 1964 at 3:37 p.m.
A fourth map (Map # 4) was revised on January 4, 1965, and again on February 5, 1965, to show a curve and wider entrance of Cypress Street (69.50 feet) at its intersection with State Highway No. 1. Map #4 contains essentially the same dedication language as Map # 2, which is silent as to the location and width of the servitude. The drawing of Cypress Street on Map #4 also contains the words, “40' Dedicated by Hospital Service District.” Map # 4 refers to the same George Ber-geron, Jr. survey of July 28, 1964, and appears to be the same survey as Map # 2 with the additional curve and entrance revisions to the street. Map # 4 was recorded in the Lafourche Parish conveyance records on February 8,1965.
In 1966, the Parish constructed Cypress Street three feet inside the property line boundary between the Matherne property and the Hospital property, thus apparently relocating the servitude at the outset. The paved portion of Cypress Street has always been forty-feet wide, | ¿except at its intersection with State Highway No. 1, and at another section which is not material to the instant discussion.[4] The Parish has maintained the paved portion of the forty-foot wide street since it was originally built. The Hospital has maintained the property on both sides of the paved portion of the street, including the three-foot strip, by mowing, cleaning debris, and installing and maintaining drainage culverts. The paved portion of the entrance to the hospital’s emergency room, doctor’s parking lot, employee parking lot, and Acadian Ambulance’s parking lot are all situated along the same side of Cypress Street as the hospital building. The strip of land on the other side of Cypress Street, between the edge of the street and the Bank property, only consists of grass and some drainage culverts. The drainage culverts are part of the drainage system for the entire Hospital grounds. Cypress Street has been used continuously by the public since it was constructed by the Parish in 1966. The Bank’s ancestors in title never owned or maintained the strip. Cypress Street has been repaved once since it was built in 1966; however, it was not relocated when it was repaved.
The Bank purchased the Matherne property in January 1999. Before acquiring the property, the Bank had a survey done of the Matherne property on October 8, 1998, by Larry J. Picciola, a consulting engineer and surveyor. The Picciola survey resulted in a fifth map (Map # 5) entitled “[s]urvey plat showing property belonging to Abel Matherne to be acquired by Community Bank. Located in Section *692 29, T-16-S, R-19-E,” which clearly shows that the actual location of Cypress Street is not on the line between the Hospital property and the Bank property. With full knowledge that Cypress Street did not abut the property line, the Bank purchased the Matherne property and immediately subdivided the land into lots for sale.
The Bank applied and received approval from the Parish to subdivide the property based on another map (Map # 6) which outlines the lots and streets in a subdivision called “Acadia Park Lot Extension.” Map # 6, bearing the same date by the same surveyor as Map # 5, was introduced by joint stipulation at trial. It is entitled “[s]urvey plat showing property belonging to Community Bank being subdivided into lot extensions.” It likewise shows the servitude does not abut the Bank property.[5]
| ¿The instant dispute arose when the Parish approved the Bank’s request for access to Cypress Street for the lot extensions and an intersecting street in Acadia Park subdivision. The Hospital opposed the access of the lots to Cypress Street over the strip of land between Cypress Street and the property line.
The Hospital sought relief from the district court in the form of a declaratory judgment on the extent of the servitude and an injunction prohibiting the Bank or any future lot owners from crossing the Hospital property to access Cypress Street.[6] The trial court granted the relief requested by the Hospital, rendering judgment declaring that the servitude of public use granted by the Hospital was limited to the forty-foot paved surface of Cypress Street. In reaching this conclusion, the trial court found the recorded maps and description of the dedicated servitude to be ambiguous, and it therefore looked to actual usage of the servitude and the Hospital’s intentions when it granted the servitude to Lafourche Parish. The judgment also ordered injunctions against both defendants. The Bank appeals the trial court’s judgment. The Parish did not appeal, and the judgment would appear to be final with respect to the Parish.
LAW AND ANALYSIS
The Bank raised eight assignments of error.[7] The issues before this court all *693 involve a determination of the location and dimensions of the servitude and the Bank’s rights in relation to the servitude which is not on its property.
An appellate court may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The Louisiana Supreme Court has set forth a two-part test for the reversal of a fact-finder’s | ^determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
In this case, the servitude of passage was established by the Hospital in a formal dedication of streets for public use on a recorded plat/survey in Lafourche Parish. Streets are public property in this state only in the sense that they are subject to public use; their roadbeds are not necessarily owned by the state, but may instead be owned by private persons. La. Civ.Code arts. 455 and 457 (former La. Civ.Code art. 658);[8] Pioneer Production Corp. v. Segraves, 340 So.2d 270, 273 (La.1976). To constitute a predial servitude, there must be “a charge on a servient estate for the benefit of a dominant estate.” La. Civ.Code art. 646 (same former article number). Predial servitudes affect immovables and run with the land. See 4 Louisiana Civil Law Treatise, Predial Servitudes, §§ 3 and 6 (2d Ed.1997).
When predial servitudes are established by the owner, the use and extent of such servitudes are regulated by the title by which they are created. La. Civ. Code art. 697 (former La. Civ.Code art. 709); Ogden v. Bankston, 398 So.2d 1037, 1040 (La.1981); White v. Durrwachter, 431 So.2d 65, 67-68 (La.App. 1st Cir.1983). In a conventional servitude of passage, unless the title provides otherwise, the extent of the right and mode of its exercise is that which is suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La. Civ.Code art. 705 (former La. Civ.Code arts. 719 and 722). When a rational construction of the record negates an intent of a landowner to dedicate a particular piece of land, the fact that reference to the land appears on a map does not, of itself, effectuate a dedication to public use. Pioneer Production Corp., 340 So.2d at 275. The fact that words of dedication are on a plat does not compel the result that the land in question has been dedicated. State Through Department of Highways v. Claitor, 289 So.2d 527, 530 (La.App. 1st Cir.1973). If the title is silent as to the extent and manner of use of the servitude, the intention of the *694 parties is to be determined in the light of its purpose. La. Civ.Code art. 749 (former La. Civ.Code art. 780). When the title 17provides the exact dimensions of the area affected by the servitude, the title is not silent as to the extent of the servitude. Red River v. Noles, 406 So.2d 294, 297 (La.App. 3rd Cir.1981).
The Civil Code articles permit the court to determine the extent and use of a servitude only when the title is silent. In the instant case, the dedication language announces an intention to dedicate a servitude of passage for public use as shown on a referenced map. The dedication language is silent as to the intention of the Hospital on the location and dimension of the servitude of passage. The dedication’s referenced map (Map # 2) depicts a drawing of Cypress Street with the dimension of “40' dedicated” clearly marked. What is not clear on Map #2 is the Hospital’s intention as to the exact location of the forty-foot street. The drawing of the street appears to be on the property line, but there is no description of Cypress Street in relation to the property line. The extent of the forty-foot servitude was not carefully laid out and described in detail on the map. Thus, the intentions of the Hospital, as grantor, are unclear and ambiguous from the dedication language and drawings on Map #2. Map #4, which shows the revised part of Cypress Street, does not clear up the ambiguity in Map # 2. Instead, the revised expansion of Cypress Street to a 69.60 foot width at the intersection of State Highway No. 1 is inconsistent with the language “40' Dedicated by Hospital Service District” which appears on the map.
The trial court, in its reasons for judgment, found the description of the servitude created by the dedication of streets on the maps to be ambiguous. We cannot say that the trial court was manifestly erroneous in this finding. It is impossible from the description of the dedicated servitude and the drawing of the street on the dedication maps to determine where the Hospital and the Parish intended Cypress Street to be located. It is unclear from the dedication language and the drawings on the maps whether the Hospital intended to dedicate the strip of land in dispute. The fact that the drawing of the street •appears to be on the property line in Map # 2 and Map # 4 does not, of itself, effectuate a dedication of the strip to public use. The only clear intent from the dedication language and maps is an intent to dedicate a forty-foot wide right of passage. Accordingly, we find no error in the trial court’s conclusion that the description of the servitude was ambiguous as to the location of the servitude of passage on the servient estate (the Hospital property).
In Harris v. Darinn Corp., 431 So.2d 441, 443 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983), we held that when a description as to location or extent of a predial servitude was insufficient, the actual use of the servitude over the servient estate may establish it. | «It is undisputed that the actual paved portion of Cypress Street in the disputed area is forty-feet wide and only the paved portion of the street has been maintained by the Parish and used by the public. It is undisputed that the Hospital maintained the property on both sides of the paved portions of Cypress Street.
The Bank argues that it should be able to rely on the recorded maps which appear to depict Cypress Street on its abutting property line. However, since the street actually lies three feet inside the property line toward the Hospital, the Bank is in effect arguing that the servitude is forty-three feet wide. The only consistent finding on each of the maps is that the dedicated servitude was for a forty-foot wide right *695 of passage. The actual construction/placement and usage of Cypress Street must be taken into consideration when determining the extent of this servitude. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. Civ. Code art. 730 (former La. Civ.Code art. 753). The doubt raised by the inconsistencies in Maps # 2 and # 4 and the dedication language may be resolved by reference to the actual use of the paved portion of the forty-foot wide street. Clarification of the question of the location and extent of the servitude by limiting it to the actual location of the forty-foot paved street did resolve the doubt in favor of the servient estate. The Hospital has an interest in controlling the traffic and access to Cypress Street in front of the approach and entry to the emergency room.
Additionally, La. Civ.Code art. 705 (former La. Civ.Code arts. 719 and 722) provides that “[ujnless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate.” There was no evidence presented that La-fourche Parish required any more than the forty-foot paved street surface for the public’s use of Cypress Street. The Parish repaved the street once in the past 35 years; however, Cypress Street was never widened from its original forty-foot width or moved from the original location of three feet inside the Bank/Hospital property line. There was no evidence that the public ever used the disputed three-foot strip on the side of the paved street. We also note that the Hospital is not doing anything which would tend to diminish the public’s use of the servitude called Cypress Street or make its use more inconvenient. See La. Civ.Code art. 748 (former La. Civ. Code art. 777). There was no evidence that the lack of access to Cypress Street over the disputed strip would diminish or make the public’s use more inconvenient.
|BLa. Civ.Code art. 750 (former La. Civ.Code art. 779) states that if the title does not specify the location of the servitude, the owners of the servient estate shall designate the location. Since the dedication language in this case does not clearly specify the location of the servitude, the Hospital (as the owner of the servient estate) may designate the location. This is exactly what the testimony of Dr. William Lucian Simpson established at trial. The Hospital presented the testimony of Dr. Simpson in order to show the location of Cypress Street as agreed upon by the Hospital and the Parish. Dr. Simpson was on the Board of the Hospital at the time the Cypress Street servitude was dedicated to Lafourche Parish. The Bank’s objection to Dr. Simpson’s testimony was properly overruled.
The general rule is that if an instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid. Clause v. Broussard, 146 So.2d 828, 833 (La.App. 3rd Cir.1962), writ refused, 243 La. 1004, 149 So.2d 763 (1963). Dr. Simpson’s undisputed testimony clearly set forth the intentions of the Hospital regarding the location of Cypress Street and supports the Hospital’s position in this case. Dr. Simpson testified about the Hospital’s desire to dedicate the street to the public and also to control access to the operations/emergency room areas of the Hospital. The Hospital Board, including Dr. Simpson, met with the Parish several times in the year preceding construction of Cypress Street. The Hospital decided to dedicate a forty-foot wide street to the public. The Hospital requested that the street be built approximately three feet inside the line between the Hospital property and the Matherne property. That is exactly the location where the forty-foot *696 wide Cypress Street was built by the Parish in 1966. We cannot find that the trial court was manifestly erroneous in concluding that the extent of the servitude did not include the three-foot strip of land. The trial court correctly permitted the testimony of Dr. Simpson to show the intentions of the parties to clarify the ambiguity and uncertainty as to the location and extent of the servitude created in the dedication language and maps depicting Cypress Street. See Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087, 1089 (La.1981); Collins v. Taylor, 518 So.2d 602, 605 (La.App. 1st Cir. 1987); Ronaldson v. Vicknair, 185 So. 52, 58 (La.App. 1st Cir.1938).
Furthermore, aside from Dr. Simpson’s testimony, there was ample evidence to support the finding of doubt as to the extent of the servitude, and such doubt is interpreted in favor of the |inowner (the Hospital) of the property affected by the servitude. See La. Civ.Code art. 730 (former La. Civ.Code art. 753).
Finally, we find no error in the trial court’s ruling that the Bank had not acquired any real rights protected by the public records doctrine in the property encumbered by the servitude. A third party protected by the public records doctrine would be a party acquiring a real or personal right, privilege or permit in immovable property.[9] See La. R.S. 9:2722 and Sick v. Bendix-United Geophysical Corp., 341 So.2d 1308, 1311 (La.App. 1st Cir.1976). The Bank did not have a real right, privilege or permit on the Hospital property which was encumbered with a servitude for public use. The ambiguities in the recorded maps and the dedication language concerning the servitude on property in which the Bank had no real property right or interest did not affect the Bank’s title on the adjacent property.
In light of our affirmance of the trial court’s finding that the servitude granted by the Hospital was limited to the forty-foot paved portion of Cypress Street, discussion of ten-year prescription of nonuse is not necessary.
CONCLUSION
The trial court sought to determine the intent of the Hospital and the Parish regarding the Cypress Street servitude from the facts before it. We cannot say that the trial court was clearly wrong in determining the location of the servitude to be the forty-foot paved portion of Cypress Street.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Defendant-appellant is to pay all costs of this appeal.
AFFIRMED.

. The Mathernes were the heirs of Abel Math-erne and his widow, Mrs. Regina Bourgeois Matherne.

. The servitude in question was not created until December 1964.

. Cypress Street narrows gradually to only eighteen feet wide near the back of the Hospital property. This section of the servitude is not at issue.

. "Map # 7” of Twin Oaks Subdivision by E.M. Collier dated May 20, 1965, revised December 14, 1965 and recorded July 30, 1970, and "Map # 8” entitled "An Addendum to Twin Oaks Subdivision,” dated July 20, 1973 and recorded August 7, 1973, do not show the servitude in question and shed no light on the controversy.

. By stipulation of the parties, except the Parish, a consent judgment was granted according to which ten (10) lots, 6.86 feet of another lot and the extension of Magnolia Street, all shown on Map # 6, were to have access to Cypress Street "by virtue of said servitude.” These lots were located basically to the rear of the hospital building. The temporary restraining order was to remain in effect as to the lots on the side of the hospital opposite the approach to the emergency room and toward La. Highway No. 1.

.The Bank's assignments of error are as follows:
A. The trial court erred in finding the location of the Cypress Street servitude to be ambiguous.
B. The trial court erred in failing to find that Cypress Street, as created by the 1964 and 1965 formal dedications, was a "public road.”
C. The trial court erred in not holding that the extent of the Cypress Street servitude was governed by title, that is, by the "formal dedication” of plats.
D. The trial court erred in failing to hold the Bank, as landowner abutting the Cypress Street servitude, has a legal right to access a public road.
E. The trial court erred by failing to hold that an alleged oral agreement between the Hospital and the Parish was ineffective, as a matter of law, to move or relocate the Cypress Street servitude.
*693 F. The trial court erred in failing to exclude testimony of the existence of an oral agreement purporting to modify a written and recorded street dedication.
G. The trial court erred in holding that the Bank, a landowner adjoining a public road, had no legal right to rely on the Louisiana Public Records Doctrine.
H. The trial court erred in failing to hold that continuous use of the paved portions of Cypress Street by the public since its construction in 1966 interrupted non-use prescription as to the entire land parcel within the recorded servitude.

. In 1977, Title IV of Book II of the Civil Code consisting of articles 646 to 822 relating to predial servitudes, was revised, amended and re-enacted by Acts 1977, No. 514, § 1, effective January 1, 1978, to contain articles 646 to 774. The controlling civil code articles in this case are the former articles which were applicable at the time the servitude was created in 1964.

. The public records doctrine is essentially a negative doctrine declaring that what is not recorded is not effective except between the parties, and a third party in purchasing, or otherwise dealing with, immovable property is entitled to rely on the absence from the public records of any unrecorded interest in the property. La. R.S. 9:2722; Smith v. State Through Dept. of Public Safety, 620 So.2d 1172, 1186 (La.App. 1st Cir.1992).