**YATES et ux. v. GULF OIL CORPORATION.**

No. 12945.

United States Court of Appeals
Fifth Circuit.

May 12, 1950.

Rehearing Denied Aug. 1, 1950.

---

James H. Starley, Pecos, Texas, for appellants.

David W. Stephens, Fort Worth, Texas, for appellee.

Before HOLMES, WALLER and BORAH, Circuit Judges.

WALLER, Circuit Judge.

The sole question involved in this case is whether under a lease made in 1924 "for the sole and only purpose of mining and operating for oil, gas, potash, or any other minerals, and of laying of pipe lines and of building of tanks, power stations and structures thereon, to produce, save and take care of said products," and granting no express privilege to the lessee to go upon the lands for the purpose of making explorations for oil and gas, an heir of the lessor to the soil can prevent lessee from making geophysical explorations by seismographic tests; or, stated differently, whether or not in a lease giving the lessee the right to mine and operate for oil and gas, with no mention of the right of exploration, there is an implied right to make such explorations over the objection of a present owner of a $\frac{1}{10}$ interest in the surface or subservient estate unless the lessee pay to him $50 for each seismographic hole drilled in such lands.

The Court below held that the lessee had the implied right to go upon the subservient estate to make geophysical explorations by the use of the seismographic process so long as the lease is in force and to use so much of such lands as is reasonably necessary for the enjoyment of the estate created under such lease.

Plaintiff sought by its original complaint a temporary restraining order prohibiting Yates and his wife, the occupants of the

land and tenants in common of the title, from interfering with the agents, servants, or employees of the plaintiff in doing geophysical work on the lands in question. Defendants answered, admitting that Yates had demanded $50 per seismographic shot hole in advance as compensation for damages that would accrue to the defendants, and asserted that the plaintiff had no legal right to enter upon the lands or to use "so much of the surface thereof as is reasonably necessary to do geophysical work" since such right was not granted under the oil and gas lease or the amendment thereof. The defendants also filed a cross-action, alleging that the cross-plaintiffs were citizens of Texas, the cross-defendant was a citizen of Pennsylvania, and the amount involved exceeded $3,000; that between the time of the issuance of the temporary restraining order and the filing of the cross-complaint the plaintiff, or cross-defendant, had completed the geophysical explorations and seismographic operations and in doing so had caused the cross-plaintiffs to suffer actual damages in the total amount of $6,535; that the exploratory operations were conducted in such gross and wanton manner as to constitute a trespass to injure the top soil and vegetation on the said cross-plaintiffs' pastures.

We take it that since the cause of action sought to be asserted in the counterclaim is one that arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction," this counterclaim was a compulsory counterclaim under Rule 13 of the Federal Rules of Civil Procedure, 28 U.S.C.A., or a counterclaim that the defendants were required to interpose in the pending suit. Testimony was taken before the Court in the absence of the jury, but counterclaimants, announcing that they did not insist upon their cross-action, offered no evidence whatsoever as to any damages caused by the explorations and seismo-

graphic operations alleged in the counterclaim.[1]

After the filing of the counterclaim, plaintiff filed an amendment to its complaint stating that it would have occasion from time to time to conduct geophysical operations, including seismographic work, in connection with its work under the terms of its lease, and that the acts of the defendants in denying it access to the premises constituted a cloud upon its title to its lease that should be removed, and that it was entitled to a declaratory judgment as to its rights and to a permanent injunction. At the time the case came on for trial the seismographic operations on the lands occupied by the defendants had been completed and any damage to be caused had already been caused to the surface, so that there was no occasion further to continue the temporary injunction. When, therefore, defendants and cross-plaintiffs renounced their right to insist upon their cross-action, the only question remaining was whether or not the plaintiff had an implied legal right to make explorations and seismographic operations upon the premises covered by its lease. The lower Court concluded: "The Court holds that under the lease involved in this suit plaintiff's predecessors in title had, and plaintiff now has, the right to enter upon all of the lands covered by said lease, and use so much of same as is reasonably necessary for the purposes provided for in said lease; and further that plaintiff has the right under such lease, among other things, so long as said lease is in force, to enter the lands covered by such lease and carry on geophysical operations, which include seismographic work, toward the end of locating, prior to the drilling of wells, the structures under the surface of the ground most likely to contain oil and gas, and ascertain where are situated the most favorable locations for drilling."

The only specification of error of the defendants is that: "The Trial Court erred in rendering judgment that appellee had

---

1. In the judgment of the lower Court the following recital is made: "whereupon plaintiff announced ready for trial, and defendants announced that they no longer insisted upon their cross-action and requested that the same be dismissed without prejudice, which was accordingly ordered by the Court: * * *"

the right to conduct geophysical operations, which includes seismographic work on the lands covered by the lease herein because said lease provides 'for the sole and only purpose of mining and operating for oil, gas, potash or any other minerals and of laying of pipe lines, and of building tanks, power stations and structures thereon, to produce, save and to take care of said products' and could not have contemplated conducting geophysical operations, including seismographic work, because same were unknown to the parties at the time of the execution of the contract."

There is neither assignment of error nor cross-assignment of error based upon the failure of the Court to make the temporary injunction permanent, or upon the failure of the Court to award damages or otherwise to make final disposition of the compulsory counterclaim.

■ The only contention of the appellants is that the intention of the parties in making the lease in question should control and that in 1924, when the lease was made, the lessors had never heard of the use of seismograph in geophysical operations in exploring for oil and gas. Wherefore they argue that there could have been no intention on the part of either party to the lease to use the seismograph in making explorations on the land in question. The Court below found that the parties executed the lease in complete unawareness of the existence of the seismographic method in geophysical tests.

We have been pointed to no case holding specifically that a lessee may not avail himself of any careful and prudent method of exploring the surface for oil and gas. In view of the fact that the lessors retained a royalty under the lease, and in view of the fact that there is an implied obligation on the part of the lessee to make reasonable and appropriate efforts to develop the oil possibilities of the leased lands, we, in the absence of impelling precedent from the Courts of Texas, are unwilling to hold that in the discharge of such obligation to develop the lessee is prohibited from taking advantage of the recent, modern, and effective developments of science in exploring for, or producing, the minerals covered by the lease.

■ Moreover, we think the State Courts of Texas have decided this question contrary to the contentions of the Appellants, and, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, we are bound by these decisions on questions of Texas law. In Shell Petroleum Corporation v. Puckett, 29 S.W.2d 809, 810, Court of Civil Appeals (Texarkana Division), we find the following language: "Appellant insists that the right conveyed to appellees 'of mining and operating for oil and gas' on the land did not pass to them a right to resort to seismographs as a means of determining whether there was oil or gas thereon or not; and that, owning no right to resort to seismographs, appellees should not have been heard to complain because appellant resorted to them for such a purpose, if it did. We think a right to prospect for oil and gas was incidental to the right conveyed to appellees to mine and operate for same on the land, and are inclined to think that in prospecting for such minerals appellees had a right to resort to seismographs."

It is true that the language above is *dictum,* but it seems that the decision of the Supreme Court of Texas in Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302, 305, supports that holding. In the latter case the Court said:

"The mere grant or reservation of minerals in place does not vest the grantee or reserver with any title to the surface. In spite of this, the grant or reservation of minerals carries with it, as a necessary appurtenance thereto, the right to use so much of the surface as may be necessary to enforce and enjoy the mineral estate conveyed or reserved. This is because a grant or reservation of minerals would be wholly worthless if the grantee or reserver could not enter upon the land in order to explore for and extract the minerals granted or reserved. 31 Tex.Jur. p. 559 et seq., and authorities there cited.

" * * * As an appurtenance to the mineral estate reserved by R. H. Harris in

his deed to F. L. Harris, he, R. H. Harris, had the right to go upon this land for the purposes of exploration and development of the thing that he owned by reservation."

In 31A Tex.Jur., page 112, the following statement appears: "The primary object or purpose of an oil or gas lease is the production of those minerals for the mutual profit of the parties. The lease invests the lessee with the right to explore for and produce the oil and gas, shows that the production is to be for the mutual benefit of the lessor and lessee, and fixes the lessor's proportion or royalty interest. The parties to an oil and gas lease are in a very practical sense committed to and engaged in a common venture for their mutual benefit."

In the same volume, page 95, this comment is found: "When the mineral estate in oil and gas has been separated from the surface estate by conveyance or reservation the owner of the former estate acquires a mineral easement or the necessary right to use the surface of the land in the enjoyment of the mineral estate. This right to the use of the surface in the development of the mineral estate may be specifically conferred by express provision in the conveyance or reservation of the minerals; *but even in the absence of an express provision creating the easement it exists by implication and as a privilege necessarily incidental to the enjoyment of the estate in the oil and gas.* The right to produce oil and gas would be worth little without the further right to do those other things necessary to the complete enjoyment of the major right." (Italics supplied.)

Again at page 190, is this language: "A lessor and lessee in an oil and gas lease are co-tenants and although title to the surface is in the former, the latter has rights of use therein to develop his mineral estate. The lessee has the dominant estate and the lessor has the servient estate in so much of the leased premises as is necessary in carrying on the oil operations provided for in the lease."

On page 209 this language is found: "It is indispensable to the development and production of oil and gas on the leased premises that the lessee enjoy the right of ingress and egress for the purpose of drilling and for conducting operations and the erection of appliances and structures on the leased land. This right is usually expressly conferred by the lease but even without such specific grant it will be implied so far as necessary to full enjoyment of the grant made."

It is the law of Texas that the oil and gas are severed from the soil into two separate estates by deed or lease or by reservation of the oil and gas in a deed to the surface. Severance may also be made by operation of law as by sale under judgment or Court decree, etc. 31 Tex.Jur., Sec. 26, page 556, states that: "When oil and gas are severed from the remainder of the soil in the manner heretofore outlined (§§ 24, 25), there spring into being two separate and distinct estates either in fee or other freehold tenure, each having all the incidents and attributes of such a holding. In other words, the owner of a severed mineral estate has the same rights of occupancy, control, alienation and inheritance as has the owner of the surface estate. * * *"

Section 27, page 558, of the same volume, states that:

"While the ordinary conveyance of oil and gas in place does not vest in the grantee any title to the surface, nor to the soil beneath it, it is nevertheless clear from what has already been said (§ 26) that a grant of these minerals carries with it as a necessary incident a right to use so much of the surface as may be necessary for exploration and development; for it is obvious that the grant would be wholly worthless if the grantee could not enter upon the land in order to extract the minerals. But the rights of the owner of the oil and gas do not go further than this. He may use the surface only for the carrying out of the purposes of the grant; if he makes any use beyond what is necessary to enjoy his rights in the minerals, his acts may amount to a trespass upon the rights of the surface owner.

"It has been said that there is an implied contract between the owner of the surface estate and the owner of the oil and gas

that each will exercise his rights in such manner as to avoid injuring the other."

In Brazos River Conservation & Reclamation District v. Adkisson, Tex.Civ.App., 173 S.W.2d 294, 298, there is the following statement: "An oil and gas lease carries with it the right to possession of the surface to the extent reasonably necessary to enable the lessee to perform the obligations imposed upon him by the lease."

In the case of United North & South Oil Co., Inc. v. Mercer, 286 S.W. 652, 655, the Court of Civil Appeals, Austin, in construing the identical lease involved in this case, had this to say: "The law is now well settled in this state that, under a lease contract similar to the one under consideration, *which has for its purpose the operation and exploration for oil and gas,* the lessee has the right of possession of any part of the surface of the land as may be reasonably necessary for *development and exploration,* and the lessor has the right to possession of the surface not reasonably necessary to carry out the lease contract. * * *" (Italics supplied.)

The rights of Yates can rise no higher than the rights which his predecessor, the lessor Estes, retained in the surface and soil, nor could Yates, one of the subsequent owners of the soil, prevent a use of the soil by the holder of a subsisting lease from his predecessor in title unless such predecessor could likewise have prevented such use. In other words, whatever duties the lessee had toward defendants' predecessor were still outstanding, and it is believed that the lessor, or his assigns, still have the right to insist upon such a fair and reasonable development of the oil and gas possibilities of the land according to practices that are modern, reasonable, feasible, and efficient, and that would tend to enhance the discovery and production of oil and gas to the benefit of the lessee as well as the royalty owner.

The judgment of the Court below is Affirmed.

HOLMES, Circuit Judge (dissenting in part).

Upon a close question of Texas land law, by its declaratory judgment, this court's decision forestalls a suit for damages in a forum of appellants' choice, and cuts off a trial by jury in an action of trespass to try title. This is more than the plaintiff even asked for in the instant case when it obtained a temporary restraining order that stayed appellants' interference until the Gulf's seismographic operations were finished, the complaint alleging that the plaintiff was financially able to respond in any damages that might accrue to the defendants, and giving a bond to secure the payment thereof as required by the court.

When this suit was originally instituted, the only special relief prayed for was an injunction to restrain the appellants from interfering with the appellee's going upon the property of the appellants for the purpose of operating a seismograph under a lease that gave the appellee the right to go on the land for the sole and only purpose of mining for oil, gas, and other minerals. The work proceeded so rapidly, under protection of the restraining order, that no hearing was ever had upon the application for a temporary or final injunction. The court below held the matter of injunctive relief to be moot, but permitted the appellee to amend its complaint and pray for a declaratory judgment.

The question of the rightful or wrongful issuance of the restraining order was not moot, and no declaratory judgment should have been granted that cut off the present or future right of the appellants to sue appellee for damages for injuries to their property caused by operations of the seismograph. The court below, under its equity powers, was free to deny relief by the declaratory-judgment procedure, and its judgment should now be modified so as to be without prejudice to appellants' rights and remedies to recover damages not only against the appellee for its alleged trespass, but also upon the injunction bond that was given as a condition precedent to the issuance of the restraining order. In Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, at p. 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407, the court said: "The jurisdiction of the district court in the present suit, praying an adjudication of rights in anticipation of their threatened infringement, is

analogous to the equity jurisdiction in suits quia timet or for a decree quieting title. See Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 263, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191. Called upon to adjudicate what is essentially an equitable cause of action, the district court was as free as in any other suit in equity to grant or withhold the relief prayed, upon equitable grounds. The Declaratory Judgments Act [28 U.S.C.A. §§ 2201, 2202] was not devised to deprive courts of their equity powers or of their freedom to withhold relief upon established equitable principles. It only provided a new form of procedure for the adjudication of rights in conformity to those principles. The Senate committee report on the bill pointed out that this Court could, in the exercise of its equity power, make rules governing the declaratory judgment procedure. S. Rep. No. 1005, 73d Cong., 2d Sess., p. 6. And the House report declared that 'large discretion is conferred upon the courts as to whether or not they will administer justice by this procedure.' H. R. Rep. No. 1264, 73d Cong., 2d Sess., p. 2; and see Brillhart v. Excess Ins. Co. of America, 316 U. S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620; Borchard, Declaratory Judgments (2d Ed.) 312."

On Petition for Rehearing

PER CURIAM.

Since no judge who concurred in the judgment of the court in this case is of the opinion that the petition for rehearing should be granted, it is ordered that the same be, and it hereby is, denied under Rule 29 of the Court of Appeals for the Fifth Circuit.