# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 8, 2010

No. 10-30335
Summary Calendar

Lyle W. Cayce
Clerk

ASPEN INSURANCE UK, LIMITED,

Plaintiff–Appellee,

v.

DUNE ENERGY, INCORPORATED, as successor-in-interest to Goldking
Energy Corporation,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-2906

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

In this diversity action, defendant–appellant Dune Energy, Inc., as
successor-in-interest to Goldking Energy Corp. (Dune), appeals from the district
court's grant of summary judgment for plaintiff–appellee Aspen Insurance UK,
Ltd. (Aspen). Dune argues that the district court erred in reading the language
of an insurance policy Dune purchased from Aspen to exclude coverage for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30335

damage to property covered by Dune's mineral lease. Concluding that the language of the policy is clear and unambiguous, and agreeing with the district court's application of its plain language, we affirm.

**I**

Dune operated several oil and gas wells on a tract of land in Louisiana known as the Bateman Lake Oilfield (leased property). Dune operated these wells pursuant to a 1935 Oil and Gas Mining Lease (Mineral Lease or Lease). While performing routine duties, Dune employees discovered an oil leak caused by the failure of a flowline operated by Dune. The leak resulted in 146 barrels of oil being released onto the property covered by the Mineral Lease. Dune spent approximately $1,200,000 cleaning the property. Dune made a claim for the cost of the cleanup under an insurance policy issued to Dune by Aspen. Aspen denied Dune's claim and sought a declaratory judgment from the district court that the insurance policy does not afford coverage for the leak.

The insurance policy from Aspen includes a Seepage and Pollution Endorsement (Endorsement), which, in relevant part, excludes coverage for property damage "directly or indirectly caused by or arising out of seepage, pollution or contamination however caused whenever or wherever happening." The exclusion does not apply, however, if the insured can show that it has met all of five conditions, which are not at issue in this appeal. Even if the insured meets all five conditions, though, the

> policy does not apply to any actual or alleged liability: . . . for seepage, pollution or contamination of property which is or was, at any time, owned, leased, rented or occupied by any insured, or which is or was, at any time, in the care, custody or control of any insured (including the soil, minerals, water or any other substance on, in or under such owned, leased, rented or occupied property or property in such care, custody or control).

2

No. 10-30335

Aspen filed a motion for summary judgment, arguing that the Endorsement excluded coverage for the damage claimed because the policy excluded coverage for property of the insured. Dune argued that the exclusion in the Endorsement did not apply because Dune leased only mineral rights, and that the "surface rights to the subject property were not owned, leased or otherwise in Dune's possession." The district court found that Dune's argument that the Mineral Lease did not extend to the damaged surface property was of "no consequence" because the "unambiguous language of the policy exclude[d] coverage for "the soil, minerals, water or any other substance on, in or under such owned, leased, rented or occupied property." The damage occurred on the physical property that Dune leased. Under the only reasonable interpretation of the policy, the district court concluded, there was no genuine issue of material fact as to whether the policy covered the damage. Thus, the district court granted Aspen's motion for summary judgment. This appeal followed.

## II

We review the district court's grant of summary judgment de novo, applying the same standards as the district court.[1] Summary judgment is warranted if there is "no genuine issue as to any material fact and the . . . movant is entitled to judgment as a matter of law," as supported by materials in the record such as documents, affidavits, or declarations.[2] We "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence."[3] We may affirm the district court's decision on any grounds supported by the record, even if not

---

[1] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009).

[2] FED. R. CIV. P. 56(a), (c)(1).

[3] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

No. 10-30335

relied upon by the district court.[4]  "Because this is a diversity action, we . . . must apply Louisiana law in an attempt to rule as a Louisiana court would if presented with the same issues,"[5] looking first to decisions of the Louisiana Supreme Court.[6]  If that court "has not spoken on the issue, it is our duty to determine as best we can what that court would decide."[7]

Dune argues on appeal that the district court made four errors in granting summary judgment for Aspen.  Dune's four claims of error actually present only one argument: the district court erred in finding that the insurance policy unambiguously excluded coverage for the pollution on the property on which Dune held the Mineral Lease and operated the leaking flowline.  We agree with the district court in its refusal to "limit" the application of the Endorsement's exclusion, its application of the exclusion, and in its finding that coverage was not owed to Dune.  We also agree with the district court's refusal to consider the rights of the lessor of the Mineral Lease, as the application of the plain language of the insurance policy does not require further inquiry into such rights.

Critically, Dune does not argue that any of the pollution affected property outside of that covered by its Mineral Lease.  Dune does, however, argue that its Mineral Lease granted Dune the limited right to use the surface as was reasonably necessary to explore for, drill, and produce oil and gas, but conveyed no title to the surface of the land.  The superior ownership and rights of use of the surface, Dune continues, remain vested in the owner of the property, who is

---

[4] *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir. 1997).

[5] *Musser Davis Land Co. v. Union Pac. Res.*, 201 F.3d 561, 563 (5th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938)).

[6] *Id.* (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)).

[7] *Id.* at 564 (citing *Transcon. Gas*, 953 F.2d at 988).

not a party to the insurance policy. Therefore, Dune asserts, the coverage it has requested is for damage to a third party's property, not to its own property. Dune argues that it can meet the five specified conditions required for coverage for pollution of another party's property. Therefore, Dune concludes, the Endorsement cannot exclude coverage for damage to the property affected.

Dune may be correct that it has no ownership rights or unlimited right to use the surface of the land on which it has the Mineral Lease, but its argument is ultimately unavailing. Dune has presented no evidence that would raise a genuine issue as to whether the insurance policy covers the damage to the property covered by its Mineral Lease. The exclusionary provision in the Endorsement must be strictly construed,[8] but in doing so we will not "creat[e] an ambiguity where none exists."[9] The 1935 Mineral Lease

> grant[ed], lease[d], and let[] exclusively [the property] unto [Dune] for the purpose of testing by any method for formations and structures and prospecting and drilling for and producing oil and gas, laying pipe lines, building tanks, storing oil and building power[] stations, telephone lines and other structures thereon (including houses for employees), to produce, save, take care of, treat and transport said product.

This Lease gives Dune broad authority over the property it covers. Any subsequent use of the surface of the land by the lessor, or the lessor's successors, would be subject to the limitations of Dune's right to explore for and produce oil and gas.[10] Indeed, Louisiana law permits "concurrent

---

[8] *Ledbetter v. Concord Gen. Corp.*, 95-0809 (La. 1/6/96); 665 So. 2d 1166, 1169, *judgment amended by* 95-0809 (La. 4/18/96); 671 So. 2d 915; *see also Hill v. Shelter Mut. Ins. Co.*, 2005-1783 (La. 7/10/06); 935 So. 2d 691, 693 ("An insurance policy is a contract between the parties and should be construed using the general rules" of contract interpretation.).

[9] *See Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05); 919 So. 2d 758, 773 (quoting *Ledbetter*, 665 So. 2d at 1169).

[10] *See Musser Davis Land Co.*, 201 F.3d at 568 (applying Louisiana law to conclude that the holder of a mineral lease had the right to conduct seismic operations to explore for oil and gas, even under the protestations of the owner of the land and lessor of the mineral lease).

No. 10-30335

use of the land by the surface owner and the mineral owner with neither owner deemed to have a paramount right of use."[11] The lessor could not exercise its ownership rights in a way that interfered with Dune's rights. It is no stretch, then, to say that Dune has at least "care, custody or control" over the land that was damaged by the pollution from its flowline.

Even if we accept Dune's argument that its Mineral Lease does not give it "care, custody or control" over the affected surface property, the language of the Endorsement is broader than Dune's representation of it. The Endorsement also excludes coverage for the "soil, minerals, water or any other substance on, in or under such owned, leased, rented or occupied property or property in such care, custody or control." Dune does not dispute that it actually occupies some of the affected property; in addition, under its Mineral Lease, Dune has the right to occupy all of the land covered by the Lease for the purpose of exploring for and producing oil and gas. The pollution resulting from the leak affected the soil, minerals, water, and other substances on that leased and occupied property. Dune has presented no evidence, and no legal authority, for the premise that its Lease somehow gives it an intangible right to the minerals without a right to occupy the property—in fact, the language of the Lease and established Louisiana law give Dune substantial rights to occupy, care for, take custody over, and control the property, soil, and minerals polluted by Dune's leaking flowline.[12]

---

[11] *Caskey v. Kelly Oil Co.*, 1998-1193 (La. 6/29/99); 737 So. 2d 1257, 1265 (interpreting LA. REV. STAT. ANN. § 31:11, "The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other.")).

[12] *See* LA. REV. STAT. ANN. § 31:11 (Supp. 2010); *Musser Davis Land Co.*, 201 F.3d at 568; *Caskey*, 373 So. 2d at 1265.

No. 10-30335

The language of the insurance policy's Endorsement is "clear and explicit and lead[s] to no absurd consequences."[13]  Dune has presented no evidence and no legal authority to support its assertion that the district court incorrectly interpreted the unambiguous language of the insurance policy.  The district court did not err in granting summary judgment to Aspen, as there was no evidence that created a genuine issue of material fact as to whether the insurance policy covered the polluted property.

*     *     *

The order of the district court is therefore AFFIRMED.

---

[13] *See Hill*, 935 So. 2d at 694.