# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30871
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2014

Lyle W. Cayce
Clerk

CASHMAN EQUIPMENT CORPORATION,

Plaintiff - Appellant

v.

SMITH MARINE TOWING CORPORATION,

Defendant-Third Party Plaintiff - Appellee

v.

SERVICIO MARINA SUPERIOR, L.L.C.,

Third Party Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-945

Before DAVIS, SOUTHWICK, HIGGINSON, Circuit Judges.

PER CURIAM:*

Following a bench trial, the district court awarded Cashman Equipment Corporation damages arising out of Smith Marine Towing Corporation's breach of a bareboat charter. Cashman appeals. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30871

## FACTS AND PROCEDURAL HISTORY

Cashman is a Massachusetts-based company that charters barges. It runs its Louisiana operations through an affiliate, Servicio Marina Superior, L.L.C. Smith Marine Towing is a Louisiana corporation specializing in chartering tugboats. In 2009, Cashman and Smith collaborated to provide tugboat and barge services to Condux, S.A., de C.V., a subsidiary of Groupo Protexa S.A., a Mexican oil company. Cashman, which took the lead on the project, was unable to recover payment from Condux. Based on its previous dealings with Condux, Cashman believed the surest way to recover payments was to refuse to provide Protexa or its affiliates with future barge services. Cashman was able to recover some payments using this tactic, but a large sum remained outstanding for the work Cashman and Smith had done for Condux.

In 2011, Smith approached Cashman about chartering deck barge JMC 2508 for an unspecified job. Cashman, who was still seeking to recover the amount owed by Condux, believed the barge would not be used for a job associated with Protexa or its affiliates. Cashman entered into Barge Bareboat Charter 2508 with Smith, which contained these terms:

> The Charter Hire shall be $2,200.00 per day without set off, beginning on October 11, 2011. . . The initial irrevocable term is thirty (30) days. Thereafter, while the [JMC 2508] remains in the possession of the CHARTERER, this agreement shall continue until possession of the Vessel is tendered by CHARTERER and accepted by OWNER. . . Upon expiration of the initial term of the contract, OWNER reserves the right to adjust the charter hire rate at OWNER's sole discretion.

Charter 2508 also included a provision prohibiting Smith from sub-chartering the JMC 2508 without Cashman's permission.

Less than a week after executing the agreement, Cashman discovered that Smith had sub-chartered the barge at $5,000 per day to Permaducto SA de CV Av. Perferica S/N, a company affiliated with Protexa. Cashman notified

2

No. 13-30871

Smith that by sub-chartering the barge without its permission it had breached Bareboat Charter 2508 and jeopardized its ability to recover payments from Condux. It therefore demanded the barge's return. Smith responded with a partial payment under the Charter but did not return the barge. Cashman again demanded the barge's return on October 27. After Smith failed to heed this request, Cashman notified Smith on November 4 that the rate would increase to $5,000 per day starting November 10. The barge was still not returned. Cashman then reported to Smith on November 17 that the price per day would increase $1,000 for each day the barge was not returned. Smith finally returned the barge on February 2, 2012, which was 85 days after it was required to return the boat. All told, Cashman had invoiced Smith sixteen times, leaving Smith with a total balance of $2,546,433.53.

Cashman brought suit against Smith to recover this amount and other claims unrelated to this appeal. The case proceeded to a bench trial, where the district court determined that Smith breached Charter 2508 by sub-chartering the JMC 2508 without Cashman's permission. The district court concluded, however, that even though Cashman was entitled to adjust the charter hire rate pursuant to the language of the Charter, it did not have the discretion to impose the exorbitant daily fees that it had charged Smith. The court concluded that Cashman was entitled to charge a reasonable daily rate for the unreturned barge but had failed to produce any evidence to determine a market rate for the barge higher than the charter. The district court also rejected Cashman's attempt to recover the $300,000 it claimed it would have recovered from Condux but for Smith's dealings with Protexa's affiliates. The district court multiplied the original charter rate, $2,200, by the 115 days Smith had possession of the barge, then added about $26,000 in other damages, to arrive at an award of $228,433.53. Cashman timely appealed.

3

No. 13-30871

DISCUSSION

We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011). Contract interpretation falls within the latter category. *Musser Davis Land Co. v. Union Pac. Res.*, 201 F.3d 561, 563 (5th Cir. 2000). "[C]harter party agreements are essentially contracts and they are subject to the general rules of contract law." *Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1234 (5th Cir. 1986).

The only conclusion of law arguably challenged by Cashman is that the district court erred by not allowing it to recover the fees imposed under the contract's language. The district court's basis for its determination was that Charter 2508's use of the term "adjust" meant something different than simply allowing Cashman to impose inequitable amounts over twenty times the original daily hire rate. Contract terms must be given a reasonable interpretation. *Makofsky v. Cunningham*, 576 F.2d 1223, 1229 (5th Cir. 1978). More fundamentally, the district court found that such exorbitant amounts were inconsistent with the purpose of contract damages, which "are meant to restore the injured party to the position he would have occupied had the breaching party performed the contract." *ARV Offshore Co., Ltd. v. Con-Dive, L.L.C.*, 514 F. App'x 524, 527 (5th Cir. 2013). The district court did not err in concluding that Cashman's adjustments to the daily charter rates were subject to a measure of reasonableness and that Cashman's chosen per diem daily rate, which reached $69,000 on the final day, was unreasonable as a matter of law.

Cashman was entitled to make an adjustment under the contract after 30 days. There was evidence that a right to adjust rates is common, but those adjustments are to respond to changing market conditions during long charters. The adjustment Cashman made was to charge a unilaterally-set amount for a penalty due to breach of the charter. Cashman produced no

4

evidence of higher market rates or some alternative and more profitable charter it could have entered. The district court found Cashman's argument to be unconvincing that it could have recovered the $300,000 from Condux if not for Smith's retention of the barge. On appeal, Cashman argues that the district court should have awarded it the $5,000 per day Smith was receiving under the sub-charter. That amount, while less arbitrary than Cashman's escalating charter hire rates, was rejected by the district court because it was an amount negotiated by Smith for the sub-charter prior to Cashman's setting the rate of $2,200 per day for the charter. We find no error when the district court held that the $5,000 per day rate was not relevant to deciding on an adjustment due to *changes* in the market.

Based on the evidence presented, the district court properly found that the only damages Cashman suffered for the refusal to return the barge immediately was the amount of $2,200 as the current market rate for the charter of this barge. This is a finding of fact based on the evidence. It was not clearly erroneous.

AFFIRMED.